The Honorable Barbara J. Rothstein

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ORBRIDGE LLC,

        Plaintiff,

    v.

SAFARI LEGACY, INC. and PRATIK PATEL

Civil Action No. 3:20-cv-6259-BJR

ORDER GRANTING MOTION FOR
PARTIAL SUMMARY JUDGMENT

## I.   INTRODUCTION

Plaintiff Orbridge LLC ("Orbridge") brings this breach of contract action against Defendants Safari Legacy, LLC ("Safari Legacy") and Pratik Patel ("Patel"). Currently before the Court is Orbridge's motion for partial summary judgment. Dkt. No. 16. Defendants oppose the motion. Dkt. No. 31. Having reviewed the motion, opposition thereto, the record of the case, and the relevant legal authority, the Court will grant the motion. The reasoning for the Court's decision follows.

## II.   BACKGROUND

### A.   Procedural History

Plaintiff initiated this breach of contract action against Defendants on December 31, 2020 and filed the instant motion for partial summary judgment on March 9, 2021. Three days later, on

March 12, 2021, Defendants filed a motion to dismiss Plaintiff's complaint, alleging that this Court lacked personal jurisdiction over Defendants, and simultaneously moved to stay Plaintiff's summary judgment motion pending resolution of the motion to dismiss. Dkt. Nos. 18, 20. This Court denied Defendants' motion to dismiss and set a briefing schedule for Plaintiff's summary judgment motion. Dkt. No. 38. The motion is now ripe and ready for this Court's review.

### B. Factual Background

Orbridge is a tour operator based out of Bainbridge Island, Washington. It arranges tours in destinations throughout the world, including East Africa. As part of its tour operations, Orbridge engages local ground handlers who provide guide and safari services, transportation, lodging, and other amenities associated with the tours.

In August 2012, Orbridge and Defendants Safari Legacy and Patel[1] entered into a written Agreement under which Safari Legacy agreed to provide ground handling services for Orbridge in East Africa. Per the terms of the Agreement, Orbridge prepaid Safari Legacy for its services. The Agreement provides that in the event Orbridge cancels a previously booked tour within 31 to 60 days of the tour departure date, Safari Legacy retains 50% of the prepaid booking fee as a cancellation fee. If Orbridge cancels a tour within 30 days of the departure date, Safari Legacy retains 100% of the prepaid booking fee. Orbridge alleges, and Defendants do not dispute, that the prepaid booking fees are fully refundable if Orbridge cancels a tour more than 60 days prior to its scheduled departure.

In addition, the Agreement contains a "worldwide crisis" provision, which provides that in the event "a worldwide crisis (similar to the one on 9/11, SARS) or another type of major event … involving a substantive area(s) included in the [tour] itinerary, **Orbridge**, at its discretion, may

---

[1] Patel owns and operates Safari Legacy.

cancel the tour at issue, and [**Safari Legacy**] will refund Orbridge the total amount paid for the tour." Dkt. No. 1, Ex. A at 3 (bold in original).

The parties operated pursuant to the Agreement uneventfully until 2020 when two things disrupted their relationship. The first was the COVID-19 pandemic, which required that several tours originally schedule for 2020 be rescheduled to 2021. The second was that Orbridge became concerned that Defendants were trying to solicit Orbridge's clients, something Orbridge alleges is prohibited by the parties' Agreement. Thereafter, on October 21, 2020, Orbridge wrote the following email to Defendants:

> After a decade of working together, the lack of response to my urgent email inquiries is deeply disappointing, as is your choice not to honor our two established times to discuss [Orbridge's concern about client solicitation].
>
> Due to these alarming developments, I feel we have no choice but to end our partnership with Safari Legacy effective immediately.

Dkt. No. 43, Ex. C. Orbridge demanded that Defendants refund $193,000 that Orbridge had prepaid for the cancelled tours.

Orbridge followed the October 21 email with an email dated November 2, 2020 in which it stated:

> Per section 5 of the contract between Safari Legacy (SL) and Orbridge, SL will immediately refund Orbridge of all monies paid to them if SL cancelled a tour, including due to State Department or World Health Organization warnings. This situation clearly applies to the $77,000 paid to SL for the 2020 Kenya tour dates and the $6,000 paid for the 2020 Rwanda gorilla permits. Please note - included in the $77,000 in deposits for 2020 Kenya was an additional $25,000 that Orbridge sent as a goodwill gesture after Pratik visited our headquarters on Bainbridge Island, Washington in September 2019.
>
> Also per section 5, there is no cancellation charge for cancellations initiated by Orbridge more than 60 days from the tour. This applies to the $110,000 in deposits made for the 2021 tours since notice was provided well in advance of 60-31 days prior to the tour.
>
> In total, SL is contractually obligated to refund the full amount of deposits made for the 2020 and 2021 Kenya tours and the 2020 permits, which is $193,000.

Dkt. No. 45, Ex. A.

Defendants failed to return the prepaid booking fees so Orbridge instituted this action for breach of contract. Orbridge claims that Defendants breached the parties' Agreement in two ways: (1) by failing to return the prepaid booking fees, and (2) by attempting to solicit Orbridge's cliental.

Orbridge now moves this Court for summary judgment on its claim for the prepaid booking fees, arguing that the material facts are not in dispute and it is entitled to judgment as a matter of law. Orbridge does not move for summary judgment on the client solicitation claim.

### III.    STANDARD OF REVIEW

The standard for summary judgment is familiar: "Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact." *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). A court's function on summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). If there is not, summary judgment is warranted.

### IV.    DISCUSSION[2]

### A.    The Prepaid Bookings Fee Claim

As stated above, Orbridge moves for summary judgment on its claim that Defendants are in breach of the parties' Agreement because they have failed to refund the $193,000 Orbridge

---

[2] Defendants "object to [Plaintiff's] assumed application of Washington substantive law" to this case because the parties' Agreement does not contain a choice of law or forum selection clause. Dkt. No. 41 at 7. In diversity cases such as this one, a court applies the choice of law rules of the

prepaid for the cancelled tours. Orbridge alleges that there is no dispute of material fact as to elements of this claim: (1) Orbridge prepaid $193,000 for tours booked in 2020 and 2021; (2) the 2020 tours were rescheduled to 2021 due to the COVID-19 pandemic; and (3) Orbridge cancelled all of the 2021 tours (*i.e.*, those originally scheduled for 2021 and those rescheduled to 2021) on October 21, 2020 more than 60 days prior to the tours' departure dates. Therefore, Orbridge argues, under the clear and unambiguous terms of the parties' Agreement, Defendants must refund the full $193,000.

Defendants do not dispute Orbridge's interpretation of the parties' Agreement, nor do they dispute that Orbridge prepaid $193,000 for the cancelled tours. Instead, Defendants dispute that Orbridge cancelled the tours. Specifically, Defendants allege that the October 21, 2020 email did not cancel the outstanding tours; rather Defendants argue, the October 21 email was an unsuccessful attempt "to terminate the contract between the parties". Dkt. No. 41 at 8 (noting that the October 21, 2020 email states that Orbridge has "no choice but to end [its] partnership with Safari Legacy effective immediately"). Defendants claim that this is a significant distinction because, according to Defendants, the parties' Agreement does not allow one party to unilaterally terminate the Agreement. Therefore, Defendants argue, because Orbridge could not unilaterally terminate the parties' Agreement, the Agreement remains in effect and the tours were not cancelled.[3]

---

forum state. *Tilden-Coil Constructors, Inc. v. Landmark American Ins. Co.*, 721 F. Supp. 2d 1007, 1012 (W.D. Wash. 2010), citing *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). In Washington courts, "Washington law presumptively applies" unless there is an "actual conflict" with another applicable body of law. *Id.* at 1013. Defendants do not argue that Washington substantive law conflicts with another applicable body of law. Thus, Washington law governs this dispute.

[3] Defendants argue in the alternative that if Orbridge did successfully terminate the parties' Agreement with the October 21, 2020 email, then Orbridge still would not be entitled to a refund of the prepaid booking fees because the Agreement specifies that a termination shall not affect a party's "rights or obligations" with respect to any tour scheduled at the time of the termination. Dkt.

1    Defendants' argument cannot save it from summary judgment. Even if this Court were to

2    accept Defendants' argument and determine that the October 21, 2020 was an unsuccessful

3    attempt to unilaterally terminate the parties' Agreement as opposed to a cancellation of the 2021

4    tours, there is no dispute that the follow-up email Orbridge sent on November 2, 2020 cancelled

5    the tours. The November 2 email specifically references the cancelled tours, the Agreement's 60-

6    day cancellation policy, the "worldwide crisis" policy, and Defendants' obligation to refund the

7    prepaid funds pursuant to those policies. Given that each of the cancelled tours was either

8    scheduled or rescheduled to occur in 2021, the November 2, 2020 email necessarily cancelled the

9    tours more than 60 days before the tours' departure dates. Thus, under the clear—and

10   undisputed—terms of the parties' Agreement, Defendants must refund the full amount of the

11   prepaid booking fees for those tours.

12   Defendants appear to argue in the alternative that if Orbridge did successfully cancel the

13   2021 tours, it did so because of the dispute between the parties regarding Defendants' alleged

14   solicitation of Orbridge's clients, not due to the COVID-19 pandemic. Once again Defendants'

15   argument is misplaced. First, the Agreement's 60-day cancellation policy does not require that

16   Orbridge cancelled the tours due to the pandemic. All it requires is that Orbridge cancel the tours

17   more than 60 days before the departure date to receive a full refund of the prepaid booking fees.

18   As this Court has already determined, Orbridge cancelled the tours more than 60 days before their

19   departure dates. Thus, Orbridge is entitled to a full refund of the prepaid fees. Full stop. Nothing

20   more is required of Orbridge.

21   Second, the "worldwide crisis" provision in the parties' Agreement also affords Orbridge

22

23

24   No. 41 at 10. Of course, this argument cuts both ways as Orbridge would still have the same "rights"
     it had under the contract as it did pre-termination (*i.e.*, the right to cancel a tour at its sole discretion
     due to the COVID-19 pandemic) and receive a full refund of the prepaid booking fees.

the right to a full refund of the fees. There is no dispute that the World Health Organization declared that COVID-19 is a worldwide pandemic and that the pandemic affected all areas of the world, including East Africa. Indeed, the parties originally agreed to reschedule the 2020 tours to 2021 because of the pandemic. Therefore, under the clear and unambiguous terms of the parties' Agreement, Orbridge was entitled to cancel the tours and receive a full refund. There is no requirement that Orbridge cancel the tours because of the COVID-19 pandemic, only that "a worldwide crisis (similar to the one on 9/11, SARS) …involving a substantive area(s) included in the itinerary" exists. Dkt. No. 1, Ex. A at 3. As the COVID-19 pandemic impacted areas included in the tours, Orbridge had the right to cancel the tours. *Id.* (stating that "**Orbridge***, at its discretion*, may cancel" a tour affected by "a worldwide crisis" and Safari Legacy "will refund Orbridge the total amount paid for the tour") (bold in original, italics added).

Thus, the record evidence is unequivocal: per the clear, unambiguous, and undisputed terms of the parties' Agreement, Orbridge is entitled to a full refund of the $193,000 it prepaid for the cancelled tours and Defendants are in breach of the Agreement for failing to refund the fees. *See Mayer v. Pierce County Medical Bureau, Inc*., 909 P.2d 1323, 1326 (Wn. App. 1995) ("Interpretation of an unambiguous contract is a question of law."); *Voorde Poorte v. Evans*, 832 P.2d 105, 107 (Wn. App. 1992) ("If a contract is unambiguous, summary judgment is proper [.]").

**B.      Prejudgment Interest**

"Under Washington law, '[a] party is entitled to prejudgment interest where the amount due is 'liquidated.'" *MKB Constructors v. Am. Zurich Ins. Co*., 83 F. Supp. 3d 1078, 1081–82 (W.D. Wash. 2015), quoting *Unigard Ins. Co. v. Mutual of Enumclaw Ins. Co*., 250 P.3d 121, 128 (2011). "A claim is liquidated 'where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion.'"

*Egerer v. CSR W., LLC*, 67 P.3d 1128, 1131 (Wn. App. 2003). "Prejudgment interest accrues from the date of the default or breach at issue." *Washington Fed. Sav. v. Algo, Inc*., 197 Wn. App. 1074 (2017). "Washington law provides a statutory prejudgment interest rate of twelve percent (12%) per annum, where no different rate is provided by contract between the parties." *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc*., 2018 WL 10687384, at *1 (W.D. Wash. June 14, 2018) citing RCW 19.52.010.

Orbridge claims that it is entitled to prejudgment interest on the prepaid bookings fees because the amount owed—$193,000—is easily calculated and requires no opinion or discretion. Orbridge further alleges that the interest should accrue from October 21, 2020, the date it notified Defendants it was cancelling the 2021 tours, and it should be set at a rate of twelve percent because the parties' Agreement is silent on the issue of prejudgment interest. Defendants do not address Orbridge's request for prejudgment interest.

This Court agrees that Orbridge is entitled to twelve percent prejudgment interest on the $193,000. However, the Court concludes that the interest began to accrue on November 2, 2020 instead of October 21, 2020.

## IV.    CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS Plaintiff's motion for partial summary judgment on its claim for $193,000 in prepaid booking fees (Dkt. No. 16) and further ORDERS that Plaintiff is entitled to an award of twelve percent prejudgment interest on this sum running from November 2, 2020.

Dated this 30th day of July 2021.

Barbara      Jacobs      Rothstein
U.S. District Court Judge